UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RANDALL PAVLOCK, KIMBERLEY PAVLOCK, and RAYMOND CAHNMAN, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 2:19-CV-0466-TLS-APR |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC J. HOLCOMB, in his official capacity as Governor of the State of Indiana; CURTIS T. HILL, in his official capacity as Attorney General of the State of Indiana; CAMERON F. CLARK, in his official capacity as the Director of the State of Indiana Department of Natural Resources, and TOM LAYCOCK, in his official capacity as Acting Director for the State of Indiana Land Office. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Plaintiffs claim that their property was taken without just compensation as a result of the Indiana Supreme Court's holding in *Gunderson v. State*, 90 N.E.3d 1171 (Ind. 2018), *cert. denied sub nom. Gunderson v. Indiana*, 139 S. Ct. 1167 (2019). What Plaintiffs assert is not an actionable claim and indeed threatens sovereignty interests protected by U.S. Supreme Court doctrine.

In *Gunderson v. State*, the Indiana Supreme Court held that "Indiana at statehood acquired equal-footing lands inclusive of the temporarily-exposed shores of Lake Michigan up to the natural [ordinary high water mark] OHWM." 90 N.E.3d

1

1171, 1181 (Ind. 2018), *cert. denied sub nom. Gunderson v. Indiana*, 139 S. Ct. 1167 (2019). The Plaintiffs in *Gunderson*, much like the Plaintiffs here, argued that prior Indiana Supreme Court decisions gave riparian landowners along Lake Michigan title to the *low* water mark, rather than the *high* water mark. *Id.* at 1183. The Indiana Supreme Court held otherwise, concluding that its earlier decision in *Stinson v. Butler*, 4 Blackf. 285, 285 (1837), did not give Lake Michigan landowners title to the low water mark because *Stinson* applied only to the Ohio River. *Id.* at 1184.

The Indiana Supreme Court's decision did "'not declare that what had been private property under established law no longer is' [but served to 'clarif[y] property entitlements (or the lack thereof)' that may have been previously unclear." *Id.* at 1185 (quoting *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 728 (2010)). The Indiana General Assembly then codified *Gunderson* in House Enrolled Act 1385, which also expanded the extent to which the public may use the shore of the public trust for recreation.

Plaintiffs ask this Court to hold that a judicial decision by the Indiana Supreme Court resulted in the taking of private property, i.e. a judicial taking. Yet, the United States Supreme Court has not held that the Takings Clause of the Fifth Amendment allows for a judicial takings claim. In *Stop the Beach Renourishment, Inc. v. Fla Dep't of Envt'l Protection*, only a plurality suggested that a judicial takings claim could be brought under the Fifth Amendment, which is not binding authority. 560 U.S. 702, 706, 715 (2010) (plurality opinion).

2

Plaintiffs ask this Court to enjoin the enforcement of a state court opinion and Indiana statute addressing public trust rights along Lake Michigan. The relief that Plaintiffs seek would strip the State of its ownership of public trust lands or forced it to pay for land that it has properly held since statehood. Such expansive action against the State's sovereign interests in public trust land is not the kind of prospective relief contemplated by *Ex parte Young,* and indeed runs headlong into the Supreme Court's specific protection of sovereign interests in land in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270, 281 (1997), not to mention the Equal Footing Doctrine. Plaintiffs' request for this Court to enjoin the enforcement of *Gunderson* and prevent the State from exercising ownership over public trust land should be dismissed.

**STANDARD OF REVIEW**

Plaintiffs' Amended Complaint should be dismissed under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, because this Court lacks subject-matter jurisdiction to address the issue in Plaintiffs' Amended Complaint, and Plaintiffs have failed to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(1) provides that a case may dismissed if the court lacks subject-matter jurisdiction. When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule 12(b)(1), "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Rueth v. U.S. E.P.A.*, 13 F.3d 227, 229 (7th Cir. 1993).

Federal Rule of Civil Procedure 12(b)(6) provides that a case may be dismissed if the complaint fails "to state claim upon which relief can be granted." When addressing a motion to dismiss under Rule 12(b)(6), "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Only "a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## BACKGROUND

Plaintiffs bring this suit against the Governor of Indiana, the Indiana Attorney General, the Director of the Indiana Department of Natural Resources, and the Acting Director for the Indiana Land Office in their official capacities to address the Indiana Supreme Court's decision in *Gunderson*, which Plaintiffs claim resulted in an uncompensated taking of their property lying below the ordinary high water mark (OHWM) along the shore of Lake Michigan (Amend. Comp. ¶¶3, 8, 10, 15–18).

This case centers on the Public Trust and Equal Footing Doctrines, which established that each state holds title to the bed and shore of navigable waterways in trust for the public, up to the OHWM. *See generally Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 372–78 (1977) (summarizing the

4

history of the public trust and equal footing doctrines). In *Gunderson*, the Indiana Supreme Court addressed the boundary between the public trust along the shore of Lake Michigan and upland private property. 90 N.E.3d at 1173. The Indiana Supreme Court noted that resolution of this issue entails a two-part analysis: (1) What is the boundary of the bed of Lake Michigan that originally passed to Indiana at statehood in 1816, which is a matter of federal law; and (2) whether the State has since relinquished title to land within that boundary, which is a matter of state law. *Id.* at 1175–76 (citing *Corvallis Sand & Gravel Co.*, 429 U.S. at 376–77).

As to the first question, *Gunderson* held that "Indiana at statehood acquired equal-footing lands inclusive of the temporarily-exposed shores of Lake Michigan up to the natural OHWM." *Gunderson*, 90 N.E.3d at 1181. As to the second question, *Gunderson* held that Indiana retained full title of the bed and shore of Lake Michigan up to the OHWM because the State had not conveyed any part of its interest to private landowners along Lake Michigan. *Id.* at 1182–86.

*Gunderson* further addressed the extent to which the public could use public trust land, holding that "*at a minimum*, walking below the natural OHWM along the shores of Lake Michigan is a protected public use in Indiana." *Id.* at 1188 (emphasis in original). The Indiana Supreme Court noted that the public trust could also be used for navigation, commerce, or fishing, but that "any enlargement of public rights on the beaches of Lake Michigan beyond those recognized today is better left to the more representative lawmaking procedures of the other branches of government." *Id.* at 1188.

5

After *Gunderson*, the Indiana General Assembly passed House Enrolled Act 1385, which codified the decision in *Gunderson*. 2020 Ind. Legis. Serv. Pub. L. 164-2020 (H.E.A. 1385) (WEST). HEA 1385 also clarified that the public may use the public trust for any recreational purpose, which "means any of the following: (1) Walking. (2) Fishing. (3) Boating. (4) Swimming. (5) Any other recreational purpose for which Lake Michigan is ordinarily used, as recognized by the commission for the purposes of this section." Ind. Code § 14-26-2.1-4 (codifying HEA 1385, effective July 1, 2020).

With regard to their first claim, Plaintiffs are asking this Court to issue a declaratory judgment that the Indiana Supreme Court's holding in *Gunderson* resulted in an uncompensated taking of Plaintiffs' property below the OHWM because the *Gunderson* decision changed state law regarding the ownership of public trust land (Amend. Comp. 29). Plaintiffs also ask this Court to issue a declaratory judgment that the codification of *Gunderson* under HEA 1385 also constitutes a taking of Plaintiff's property below the OHWM (Amend. Comp. 29).

Plaintiffs seek a permanent injunction "prohibiting Defendants and the State of Indiana from enforcing both the *Gunderson* decision and HEA 1385" and "prohibiting Defendants and the State from exercising ownership over the disputed property." (Amend Comp. 29). With regard to their second claim, Plaintiffs seek an injunction "prohibiting Defendants from enforcing HEA 1385's expansion of public rights to the shore of Lake Michigan below the OHWM beyond the traditional public trust triad and transitory walking" (Amend. Comp. 29).

6

## ARGUMENT

I. **The Amended Complaint fails to state a claim for a judicial taking because such a right of action does not exist.**

Plaintiffs contend that a court has made a legal determination of state public trust ownership that aggrieves them, but state judges are absolutely immune from section 1983 lawsuits targeting core judicial functions (such as deciding cases). *See* 42 U.S.C. § 1983. Instead, Plaintiffs attempt to assert a free-standing judicial takings claim under the Fifth Amendment, but no such claim exists. Plaintiffs cite *Stop the Beach Renourishment, Inc. v. Fla Dep't of Envt'l Protection*, 560 U.S. 702, 713-15 (2010) (plurality opinion) (hereinafter *Stop the Beach*), for the proposition that a judicial opinion can effect a taking of private property (Amend. Comp. ¶ 77). But the portion of *Stop the Beach* suggesting that possibility is a plurality opinion, and is not binding authority, so it does not provide an actionable claim. *See id.* at 706 (noting that Parts II and III of the opinion, those parts addressing so-called judicial takings, are not the judgment of the Court because they received only four total votes).

The view of the four justices who agree that a state court opinion may create a judicial taking does not provide the "narrowest ground" for the Court's holding in *Stop the Beach*, so it is not the "law of the land" under *Marks v. United States,* 430 U.S. 188, 193 (1977); *see also Gibson v. American Cyanamid Co.*, 760 F.3d 600, 619 (7th Cir. 2014) (applying *Marks*) (quotations omitted). And where "there is no binding precedent . . . on the Takings Clause," the Seventh Circuit has held that

plaintiffs are "without a basis to argue that a statute or regulation (let alone a judicial decision)" imposes a burden that "amounts to a 'taking'." *Gibson*, 760 F.3d at 626.

In addition, legal and practical concerns warn against such a holding here. As Justice Kennedy explained, a judicial decision which alters property rights turns on the legitimacy of the court's reasoning, rather than the availability of compensation, which is the focus of the Fifth Amendment Takings Clause. *Stop the Beach*, 560 U.S. at 736 (Kennedy, J., concurring). "[I]f the Court were to hold that a judicial taking exists, it would presuppose that a judicial decision eliminating established property rights is 'otherwise constitutional' so long as the State compensates the aggrieved property owners [even though there] is no clear authority for this proposition." *Id*. at 736 (Kennedy, J., concurring). Equally problematic, if a judicial taking were recognized and enforceable through the Fifth Amendment, a state court holding could bind another branch of state government to provide compensation, even if that other branch had no interest in exercising its sovereign authority to take property. *See id*. at 736 (Kennedy, J., concurring).

The possibility of a judicial taking confounds identifying a proper defendant or proper relief. To start with the question of relief, the Fifth Amendment "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.*, 482 U.S. 304, 314 (1987) (citations omitted). A government entity, in exercising sovereignty, may take property for public use, but

must pay just compensation for it. *See id*. at 315. The Fifth Amendment's text and the Supreme Court doctrine do not contemplate the injunctive relief Plaintiffs seek here. *Knick*, 139 S. Ct. At 2168, 2176 ("Today because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable."). Courts should not issue injunctions as remedies for unconstitutional takings.

Yet, sovereign immunity prohibits a claim for damages against a state in federal court. "Even though the Fifth Amendment alone may support a cause of action for damages against the United States, the Eleventh Amendment stands as an express bar to federal power when a similar action is brought against one of the states." *Garrett v. Illinois*, 612 F.2d 1038, 1040 (7th Cir. 1980 (citation omitted)); *see also Hutto v. South Carolina Retirement System*, 773 F.3d 536, 553 (4th Cir. 2014) (stating "the Takings Clause does not override the Eleventh Amendment") (collecting cases). The Takings Clause does not trump sovereign immunity. Accordingly, no relief is available to plaintiffs under a freestanding Fifth Amendment takings claim.

A judicial taking is further confounded by basic standing principles, which requires that the defendant should be both the cause of the alleged unlawful action and the appropriate party to provide relief. *See Taylor v. McCament*, 875 F.3d 849, 855 (7th Cir. 2017). But in a judicial takings claim, the judge(s) would be responsible for changing the law which resulted in the taking, but could not possibly be responsible for providing relief, whether that be compensation or injunctive relief

9

in the form of enforcing trespass laws or otherwise exercising sovereign authority over the disputed land. That creates a lack of Article III redressability even if a freestanding right of action existed.

Ultimately, "[t]he Framers most likely viewed this Clause as applying only to physical appropriation pursuant to the power of eminent domain." *Id*. at 739 (Kennedy, J., concurring). Although Takings Clause doctrine has expanded beyond the Framers' precise understanding, the Supreme Court "should consider with care the decision to extend the Takings Clause in a manner that might be inconsistent with historical practice." *Id*. at 739 (Kennedy, J., concurring).  And without proper Supreme Court guidance, this Court is not in a position to cobble together a stand-alone judicial takings claim.

## II. **Plaintiffs' claims are barred by sovereign immunity.**

### A. **Plaintiffs' claim is the functional equivalent of a quiet title action and does not fall within the ambit of *Ex parte Young*.**

States enjoy sovereign immunity from private suits. *Hans v. Louisiana*, 134 U.S. 1 (1890). A state's sovereign immunity bars a Fifth Amendment takings claim brought against a state or state agency in federal court. *See Garrett*, 612 F.2d at 1040; *Bay Point Properties, Inc. v. Mississippi Transportation Comm'n,* 937 F.3d 454, 456 (5th Cir. 2019) ("Nothing in Knick alters these bedrock principles of sovereign immunity law."); *Hutto v. South Carolina Retirement System*, 773 F.3d 536, 553 (4th Cir. 2014) (stating that "the Takings Clause does not override the Eleventh Amendment") (collecting cases).

*Ex parte Young* established a narrow exception for claims against state officials to enjoin actions in violation of federal law. *Ex parte Young*, 209 U.S. 123, 161 (1908); *Jensen v. State Bd. of Tax Com'rs of State of Ind.*, 763 F.2d 272, 278 (7th Cir. 1985) ("The *Ex parte Young* exception has been construed narrowly."). However, the Supreme Court has rejected the use of *Young* where the claim is "the functional equivalent of a quiet title action" which implicates "special sovereignty interests" that warrant sovereign immunity from suit. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270, 281 (1997).

In *Coeur d'Alene Tribe of Idaho*, a Tribe brought suit against the State of Idaho, various state agencies, and numerous state officials in their individual capacities. *Id.* at 265. The Tribe sought a declaratory judgment "to establish its entitlement to the exclusive use and occupancy and the right to quiet enjoyment of the submerged lands as well as a declaration of the invalidity of all Idaho statutes, ordinances, regulations, customs, or usages which purport to regulate, authorize, use, or affect in any way the submerged lands." *Id.* at 265. It also sought injunctive relief prohibiting the defendants, including members of the Idaho Board of Land Commissioners, "from regulating, permitting, or taking any action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands." *Id.* at 265, 282.

Since, however, the Tribe's requested relief would cause "substantially all benefits of ownership and control [to] shift from the State to the Tribe," the Court found the Tribe's claim to be the functional equivalent of a quiet title action. *Id.* at

282. The case was "especially troubling" for the Court because of the "far-reaching and invasive relief" the Tribe was seeking, which went "well beyond the typical stakes in a real property quiet title action." *Id.* at 282. The Tribe's suit sought to "diminish, even extinguish, the State's control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory." *Id.* at 282.

Here, the Plaintiffs raise what is effectively a quiet title action challenging the State of Indiana's sovereign authority over public trust land. They ask that this Court enjoin the State's exercise of ownership over at least 45 miles of Lake Michigan shoreline (Amend. Comp. ¶¶1, 64), if not hundreds of miles of shore along other navigable waterways in the State. This is not the typical takings case addressing a discrete parcel of land.

In *Coeur d'Alene Tribe of Idaho*, the Plaintiffs' injunctive relief sought to "block all attempts by these officials to exercise jurisdiction over a substantial portion of land" and to "divest the State of its sovereign control over submerged lands, lands with a unique status in the law and infused with a public trust the State itself is bound to respect." 521 U.S. at 283. Here, similarly, the Plaintiffs are asking this Court to enjoin the State Defendants from exercising its ownership over public trust land in Indiana (Amend. Comp. 29).

Plaintiffs also seek a declaratory judgment which could be used to obtain damages in state court, thus circumventing the State's Eleventh Amendment immunity. *See* Part II.B, *infra.* Such a ruling would result in the State having to

pay for land that it has rightfully held since statehood. *See Coeur d'Alene Tribe of Idaho*, 521 U.S. at 283–86 (discussing the public trust and equal footing doctrines).

The Court concluded that the *Young* exception to sovereign immunity should not apply because "if the Tribe were to prevail, Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Id.* at 287. Here, Plaintiffs' request for a declaratory judgment could result in a levy on Indiana's treasury, *see* Part II.B, *infra*, and Plaintiffs' request for injunctive relief would require the State to relinquish control over public trust lands that would be as intrusive as a claim for damages. *Id.* at 287. Because the Plaintiffs' claims also implicate the State's sovereign immunity, the narrow *Young* exception should not apply to the Defendants. As in *Coeur d'Alene Tribe of Idaho*, Plaintiffs' claims for relief cannot be disregarded as "causing little or no offense" to Indiana's sovereign authority as a member of the Union. *Id.* at 282. Indiana's Eleventh Amendment sovereign immunity bars the Plaintiffs' claim, and this case should be dismissed. *See*, e.g., *Stevens v. Illinois Dep't of Transp.*, 210 F.3d 732, 741 (7th Cir. 2000).

**B. Sovereign immunity also bars declaratory relief**

Just as the Eleventh Amendment bars the Court from issuing injunctive relief, it likewise bars declaratory relief. A plaintiff may not obtain damages against a state in a takings case because the Eleventh Amendment bars such relief. *See Garrett*, 612 F.2d at 1040; *Bay Point Properties, Inc.,* 937 F.3d at 456 ("Nothing in *Knick* alters these bedrock principles of sovereign immunity law."). The Plaintiffs

13

acknowledge as much, and thus invoke the *Young* exception, by requesting a declaratory judgment that *Gunderson* "effected an uncompensated taking of Plaintiff's property below the OHWM, including the dry beach," and that HEA 1385 is also unconstitutional (Amend. Comp. 29). However, the narrow *Young* exception does not allow Plaintiffs to obtain a declaratory judgment against state officials as an end-run around the Eleventh Amendment.

In *Green v. Mansour*, the U.S. Supreme Court held that if a declaratory judgment might be offered in state court as res judicata on the issue of liability, such that the state courts need only calculate and order payment of damages, then the declaratory judgment cannot be issued as "the result would be a partial 'end run' around" a state's sovereign immunity from a suit for damages. 474 U.S. 64, 73 (1985) (footnote omitted). The Seventh Circuit Court of Appeals relied upon *Green v. Mansour*'s rationale when it twice denied declaratory relief on Eleventh Amendment grounds.

In *MSA Realty Corp. v. State of Ill.*, the Seventh Circuit considered whether to issue the plaintiff's declaratory relief, specifically, "a declaration that defendants have violated both the constitutional prohibition against impairment of contracts and MSA's due process rights." 990 F.2d 288, 290 (7th Cir. 1993). In considering that issue, the court noted: "For the federal court to declare that defendants have violated the impairment of contracts clause in the past would give MSA a judgment that would have res judicata effect in state court on the issue of liability." *Id.* at 295. The Court then concluded that "[declaratory] relief should be denied when it 'would

14

have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.'" *Id.* (quoting *Green*, 474 U.S. at 73).

In *Council 31 of the American Federation of State, County and Municipal Employees, AFL-CIO v. Quinn*, the Seventh Circuit considered again whether the Eleventh Amendment prohibited declaratory relief against a state official. 680 F.3d 875, 882, 884 (7th Cir. 2012). In holding that the Eleventh Amendment bars all relief that Council 31 seeks," *id.*, the Court concluded: "[D]eclaratory relief should not be awarded where the eleventh amendment bars an award of monetary or injunctive relief , otherwise the [declaratory relief] would operate as a means of avoiding the amendment's bar," *id.* (quoting *MSA Realty*, 990 F.2d at 295). These cases comprise a rule that plaintiffs may not use the *Young* exception to obtain declaratory relief in federal court that would have res judicata effect in state court, thereby allowing plaintiffs to get money damages that the Eleventh Amendment prevents the federal court from awarding.

Should Plaintiffs receive the declaratory judgment they seek from a federal court, they could use that judgment to bind an Indiana state court on the takings issues and receive money damages in an inverse condemnation action, *see* I.C. § 32-24-1-16, thus rendering the Eleventh Amendment a nullity. Grounded in comity and federalism principles that acknowledge the states as independent sovereigns, "Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270. Putting

15

those principles into practice, the Eleventh Amendment "strips federal courts of the power to entertain suits against nonconsenting states," *Jensen*, 763 F.2d at 276, as a concession to the states' dignity and status as co-sovereigns, *see Coeur d'Alene Tribe of Idaho*, 521 U.S. at 276. Allowing Plaintiffs to circumvent the Eleventh Amendment by obtaining declaratory relief from a federal court to eventually get money damages from a state, that would otherwise be unavailable in federal court, steps outside *Ex parte Young*'s narrow parameters. Since the declaratory relief Plaintiffs seek would have a res judicata effect to bind the State of Indiana in a state court inverse condemnation proceeding, this Court should dismiss the Plaintiffs' request for declaratory judgment.

### III.   Because the Plaintiffs' first takings claim should be dismissed, there is no basis for Plaintiffs' second cause of action.

Plaintiffs' second claim alleges a taking of their property due to HEA 1385 expanding the scope of the public's use of the shore below the OHWM. Relying on *Kaiser Aetna* and *Nollan*, Plaintiffs argue that the expansion of the public's recreational use of the shore infringes on their fee simple title in the land. *Kaiser Aetna* and *Nollan* hold that if a private landowner's fee simple title is infringed upon by a public easement, this results in a taking of property. *See Kaiser Aetna v. United States*, 444 U.S. 164, 180 (1979) (holding that the Government must compensate owners of a private pond that was converted into a marina—and navigable waterway—before requiring that the marina owners allow the public access to the marina, as Hawaii law had recognized the pond as private property before the improvements); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 828 (1987)

16

(holding that conditioning permit approval on granting the public an easement across their private property to reach a public beach area constituted a physical taking that required just compensation).

In *Kaiser Aetna* and *Nollan,* there was no dispute that the private property owner initially had fee simple title of the disputed land. But here, the Indiana Supreme Court held that landowners who derive their title from a federal land patent after 1816, when Indiana established statehood, never had title below the OHWM. *Gunderson*, 90 N.E.3d at 1179. The Indiana Supreme Court explained that under the equal-footing doctrine, Indiana obtained title to the submerged lands of Lake Michigan up to the OWHM that vested "'absolutely as of the time of its admission' to the Union." *Id.* at 1178 (quoting *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 428 U.S. 370–71). As such, the Federal land patent granted to the Gundersons in 1837 could not convey title to land below Lake Michigan's OHWM. The Indiana Supreme Court further concluded that Indiana's legislature had never expressly extinguished the public trust in the shore land below the OHWM. *Id.* at 1183. The Indiana Supreme Court also concluded that "any enlargement of public rights on the beaches beyond [walking below the natural OHWM along the shores of Lake Michigan] is better left" to the "representative lawmaking procedures." *Id.* at 1188.

17

Unlike *Kaiser Aetna* and *Nollan*, the Plaintiffs here never had title to the shore below the OHWM.[1] Knowing this, Plaintiffs' second claim is expressly conditioned on the success of their first claim (Amend. Comp. ¶¶ 80-87). If this Court holds that the *Gunderson* decision cannot be challenged as a judicial taking, then HEA 1385 merely codifies existing case law and establishes the right of the public to use State property for recreational purposes in addition to transitory walking.

As outlined above, Plaintiffs' first claim should be dismissed because a judicial takings claim is not a legally cognizable action. Given the necessary dismissal of Plaintiffs' first claim for relief, their second claim must also be dismissed. *See*, *e.g.*, *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985) (dismissing a Section 1986 claim because "Section 1986 liability is derivative of Section 1985 liability, [such] that the dismissal of the Section 1985(3) claim requires dismissal of the Section 1986 claim"); *Vinson v. Vermilion Cty., Illinois*, 776 F.3d 924, 927 (7th Cir. 2015) (holding that "because the [trespass] claim against Walsh depended on the validity of the trespass claim against Sherrick and Shaw, the court dismissed the claim against Walsh"); *Worst v. City of Chi.*, 2011 WL 3349818, No. 10-c-6538, at *6 (N.D. Ill. August 2, 2011) (holding that because the plaintiffs had failed to state a valid excessive force claim, which the court

---

[1] This assumes that the Plaintiffs derived their title from a federal land grant, rather than a state land grant. Ind. Code § 14-26-2.1-3 (codifying HEA 1385, effective July 1, 2020, stating "[a]bsent any authorized legislative conveyance before February 14, 2018, the state of Indiana owns all of Lake Michigan within the boundaries of Indiana in trust for the use and enjoyment of all citizens of Indiana.")

dismissed, the court also had to dismiss the related failure to intervene claims because a successful failure to intervene claim is conditioned on a finding of excessive force).

### IV. The Plaintiffs cannot obtain their requested relief from the Governor, the Attorney General, or the Acting Director of the State Land Office.

Plaintiffs request an order "prohibiting Defendants and the State of Indiana from enforcing both the Gunderson decision and HEA 1385's provisions on ownership of Lake Michigan below the OHWM, and thus prohibiting Defendants and the State from exercising ownership over the disputed property." (Amend. Comp. 29). Plaintiffs also ask for a permanent injunction "prohibiting Defendants from enforcing HEA 1385's expansion of public rights to the shore of Lake Michigan below the OHWM beyond the traditional public trust triad and transitory walking." (Amend. Comp. 29).

An injunction cannot be entered against the State of Indiana because the State itself is not named as a party. Even if named as a party, the State is immune from suit under the Eleventh Amendment, and the *Young* exception for injunctive relief does not apply to the State or state agencies. *See Jensen*, 763 F.2d at 278 (noting that the *Young* exception "has been held inapplicable to suits naming a state or one of its agencies rather than an individual state official as a defendant").

As for the named defendants, the Governor, the Indiana Attorney General, and the Acting Director for the State Land Office cannot provide the injunctive relief requested by the Plaintiffs. *Young* established a narrow exception for claims

against state officials to enjoin actions in violation of federal law. *Ex parte Young*, 209 U.S. 123, 161 (1908); *Jensen*, 763 F.2d at 278 ("The *Ex parte Young* exception has been construed narrowly."). In order for *Young* to apply, the state official must be "clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings … to enforce against parties affected an unconstitutional act." *Ex parte Young*, 209 U.S. at 156.

"It has long been held that before a state officer … may properly be made a party defendant to a suit to enjoin the enforcement of an act alleged to be unconstitutional, he must have some connection with the enforcement of the act." (citations omitted)) *McCrimmon v. Daley*, 418 F.2d 366, 368 (7th Cir. 1969). This requirement aligns with the redressability requirement for standing, as Plaintiffs must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citations omitted).

The Governor, Attorney General, and Acting Director for the State Land Office are not charged with the control or management of the navigable waterways and public trust land (Amend. Comp. ¶¶16, 17, 19), so they cannot provide the injunctive relief requested by the Plaintiffs. The Indiana State Land office does not play a role in the State exercising ownership over public trust land, but merely "serves as the repository for deeds and plats of land previously or currently owned by the State." (Amend. Comp. ¶19); *see also* Ind. Code § 14-18-1.5-3. While Plaintiffs rely on the general enforcement authority of the Governor and Attorney General,

that is not enough to make them proper defendants to provide the requested relief (Amend. Comp. ¶16–17). "The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *See Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir. 2017), *cert. denied*, 139 S. Ct. 126 (2018) (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979))). Consequently, sovereign immunity bars the Plaintiffs' claim for injunctive relief, as the *Young* exception cannot be applied to these named Defendants. *Id.* at 976–78.

Plaintiffs' request for declaratory relief fails for similar reasons. To establish a claim for a declaratory judgment, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Simic v. City of Chicago*, 851 F.3d 734, 740 (7th Cir. 2017) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (citation and internal quotation marks omitted; emphasis omitted). Declaratory relief can only be obtained by a party with standing under Article III. *See Foster v. Ctr. Twp. of LaPorte Cty.*, 798 F.2d 237, 242 (7th Cir. 1986) ("The case-or-controversy requirement of Article III applies with equal force to actions for declaratory judgments as it does to actions seeking traditional coercive relief."). But here, the Governor, the Attorney General, and the Acting Director of the State Land Office are not charged with the control or management of the navigable waterways or public trust land, so they cannot redress Plaintiffs'

alleged injury. They are not proper parties for injunctive or declaratory relief and should be dismissed from this case.

## CONCLUSION

Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,

By:   Andrea E. Rahman
Deputy Attorney General
Attorney No. 32728-29

Courtney Abshire
Deputy Attorney General
Attorney No. 35800-49

Jefferson S. Garn
Deputy Attorney General
Attorney No. 29921-49

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-6332
Fax: (317) 232-7979
Andrea.Rahman@atg.in.gov